# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CLAUDE STEPHEN BENT,

*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

*Respondent*.

No. 22-1910

Agency No.
037-050-176

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 17, 2023
San Francisco, California

Filed August 15, 2024
Amended September 6, 2024

Before: Danielle J. Forrest and Salvador Mendoza, Jr.,
Circuit Judges, and Solomon Oliver, Jr.,* District Judge.

---

* The Honorable Solomon Oliver, Jr., Senior United States District Judge for the Northern District of Ohio, sitting by designation.

Order;
Opinion by Judge Mendoza;
Dissent by Judge Forrest

## SUMMARY[**]

### Immigration

The panel filed (1) an order granting a petition for panel rehearing and amending the majority opinion filed August 15, 2024; and (2) an amended opinion granting in part petitioner Claude Stephen Bent's petition for review of the Board of Immigration Appeals' denial of his motion to reopen removal proceedings, and remanding for the BIA to adjudicate petitioner's motion to reopen under the correct legal standards.

Petitioner moved to reopen his removal proceedings after a California state court vacated his felony conviction under the authority of Cal. Penal Code § 1473.7(a)(1) because the conviction was premised on an involuntary guilty plea in violation of his Fifth Amendment rights. The BIA determined that the motion was untimely and not subject to equitable tolling, and that petitioner had not established prima facie eligibility for relief from removal because it viewed § 1473.7(a)(1) as a statute that enables a court to vacate a conviction solely to mitigate its collateral immigration consequences.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel noted that this was the rare case in which both parties sought remand for the BIA to reassess its decision given the BIA's mischaracterization of § 1473.7(a)(1) as a statute that enables a court to vacate a conviction solely to mitigate its collateral immigration consequences. The panel held that the request for remand was not frivolous, explaining that the BIA plainly erred in construing the California statute and the state court's order, because that order had set aside petitioner's plea as constitutionally deficient, not to alleviate any adverse immigration consequences.

The panel additionally held that the BIA misapplied equitable tolling precedent in assessing whether petitioner diligently pursued his rights. Accordingly, the panel granted the petition for review.

Dissenting, Judge Forrest would deny the petition for review because petitioner's motion to reopen was untimely, he is not entitled to relief based on a 2021 regulation that provides an exception to untimeliness where there have been material changes in fact or law, and he is not entitled to equitable tolling.

In an unpublished order, the panel severed this petition from a pending petition for review of petitioner's application for asylum and related relief and held it in abeyance pending resolution of this case on remand.

## COUNSEL

Kari E. Hong (argued), Florence Immigrant and Refugee Rights Project, Tucson, Arizona, for Petitioner.

Tim Ramnitz (argued), Senior Litigation Counsel, Shelley R. Goad, Assistant Director and Jennifer J. Keeney, Assistant Directors; Civil Division Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; United States Department of Justice, Washington, D.C.; for Respondent.

Andrew Wachtenheim, Immigrant Defense Project, New York, New York, for Amici Curiae Alberto Gonzalez; American Immigration Council, Andrea H. Sloan, Annie Garcy, Black Alliance for Just Immigration, Bruce J. Einhorn, Carol King, Cecelia Espenoza, Charles Honeyman, Dana Marks, Eliza Klein, Former Immigration Judges, George Chew, Heartland Alliance's National Immigrant Justice, Holly Cooper, Ilyce Shugall, Immigrant Defense Project, Immigrant Justice Idaho, Ira Kurzban, Jeffrey Chase, John Richardson, Laura Ramirez, Lory Rosenberg, Miriam Hayward, National Immigration Project of the National Lawyers Guild, Noel Ferris, Oregon Justice Resource Center, Patricia Sheppard, Paul Grussendorf, Paul Schmidt, Polly Webber, Rockey Mountain Immigrant Advocacy Network, Steven Abrams, Steven Morley and Terry Bain,

Rebecca G. Powell, Horvitz & Levy LLP, Burbank, California, for Amici Curiae American Civil Liberties Union, California Attorneys for Criminal Justice, California Public Defenders Association and Immigrant Legal Resource Center.

**ORDER**

The petition for panel rehearing (Dkt. No. 83) is GRANTED. The opinion filed August 15, 2024, and appearing at --F.4th --, 2024 WL 3819829 (9th Cir. Aug. 15, 2024) is hereby amended. The amended opinion will be filed concurrently with this order. The dissent is unchanged. The existing deadline to file a Petition for Rehearing or Petition for Rehearing En Banc remains in place.

**OPINION**

MENDOZA, Circuit Judge:

This is a rare case: both the government and Petitioner Claude Bent seek remand so that the Board of Immigration Appeals ("BIA") can reassess its decision denying Bent's motion to reopen removal proceedings. Bent moved to reopen his removal proceedings after a California court, acting under California Penal Code § 1473.7(a)(1), vacated the conviction that formed the basis of his removal because it was premised on an involuntary plea, in violation of Bent's Fifth Amendment rights. Bent argues, and the government agrees, that the BIA erred by mischaracterizing § 1473.7(a)(1) as a statute that enables a court to vacate a conviction solely to mitigate its collateral immigration consequences, *i.e.*, issue a "rehabilitative vacatur." Understandably, both parties ask that we remand so that the BIA can correct its mistake, reconsider the impact of the § 1473.7 vacatur, and determine whether Bent diligently pursued his rights such that he is entitled to equitable tolling of the motion-to-reopen deadline. Absent a showing of bad

faith or frivolity, we typically grant such remand requests. Accordingly, and because the BIA misconstrued the nature of Bent's vacatur and misapplied our equitable-tolling precedent, we grant the government's non-frivolous request for remand so that the BIA may adjudicate Bent's motion to reopen under the correct legal standards.

## I.    Background

Claude Bent, a native and citizen of Jamaica, has been a lawful permanent resident in the United States since 1980. On September 6, 2006, he pleaded no contest to two felony charges in California state court. During his plea hearing, the judge asked Bent if he understood "all the possible consequences" of his plea and Bent stated that he did. The judge also listed many of those consequences, including the term of imprisonment, parole, fees, and California's three strikes law, but he did not mention whether Bent's plea would have immigration consequences. The state court accepted Bent's pleas, found Bent guilty on both counts, and sentenced him to roughly thirteen years' imprisonment.

Immediately after Bent's release from prison in July 2016, the Department of Homeland Security ("DHS") detained him. Soon after, DHS served Bent with a Notice to Appear ("NTA"), charging him as "subject to removal from the United States pursuant to . . . Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act" because he had been "convicted of an aggravated felony."

Thus began Bent's long—and ongoing—journey through removal proceedings.[1]  On December 23, 2016,

---

[1] This matter's procedural history is long and not entirely relevant to the disposition of the issues before us. We keep our recitation of the

Bent applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  In April 2017, an immigration judge ("IJ") denied Bent's petition for relief and ordered him removed to Jamaica.  Bent, proceeding pro se, then appealed to the BIA, which affirmed the IJ's decision.  In September 2017, Bent timely petitioned for review of the BIA's decision.  *Bent v. Barr*, 775 F. App'x 281 (9th Cir. 2019).  We granted the petition and remanded to the BIA.  *Id.* at 283.  The BIA then remanded the case back to the IJ.

The IJ again ordered Bent removed.  The IJ also denied Bent's application for asylum and withholding of removal because he had been convicted of a particularly serious crime, and denied his CAT claim because he did not show a risk of future torture.  Bent again appealed to the BIA, which dismissed the appeal on December 22, 2021.  On January 18, 2022, Bent timely petitioned for review of the BIA's decision before this court.  That petition, Petition No. 22-112, is pending before us today.

Shortly after filing Petition No. 22-112, Bent moved to vacate his 2006 conviction in California state court.  A hearing on the motion was calendared for May 17, 2022, and the state court granted the motion on June 7, 2022.  The court held:

> The no contest plea to Penal Code section 664/187(a), attempted murder, entered September 6, 2006, is set aside in its entirety on the ground [that Bent] was unable to meaningfully understand and defend against

---

procedural background brief, and focus on those aspects germane to our decision.

> the immigration consequences of his plea,
> resulting in an involuntary plea in violation
> of the Fifth Amendment [to] the United
> States Constitution, and is thus legally invalid
> pursuant to Penal Code section 1473.7(a)(1).

On July 8, Bent moved to reopen his removal proceedings before the BIA, arguing that the sole basis for his removal—his 2006 conviction—had been vacated as unconstitutional, and that he was therefore no longer removable. The BIA denied Bent's motion to reopen on November 17, 2022. The BIA determined that Bent's motion was untimely and not subject to equitable tolling because Bent did not demonstrate that he diligently pursued his rights beginning in 2006, when he was convicted.

The BIA also found that Bent had not established prima facie eligibility for relief from removal. The BIA noted that so-called "rehabilitative" vacaturs that are granted "to prevent immigration hardships" do "not affect [a] conviction's validity for immigration purposes." The BIA asserted that California Penal Code § 1473.7(a)(1) "explicitly allows for vacaturs of state convictions solely to alleviate immigration consequences." The BIA acknowledged the state court's finding that Bent "was unable to meaningfully understand and defend against the immigration consequences of his plea," but viewed that finding as "contradicted by the transcript of the plea colloquy."

Bent timely petitioned for review of the BIA's denial of his motion to reopen.  That petition, Petition No. 22-1910, is also presently before us.[2]

## II.    Standard of Review

We review the denial of a motion to reopen for abuse of discretion.  *Zhao v. Holder*, 728 F.3d 1144, 1147 (9th Cir. 2013).    "The BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to the law,' and 'when it fails to provide a reasoned explanation for its actions.'" *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014) (quoting *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005)).

## III.    Discussion

Bent contends that the BIA erred in denying his motion to reopen by (1) mischaracterizing § 1473.7(a)(1), and (2) applying an incorrect legal framework to assess whether he exercised due diligence for purposes of equitable tolling. He urges "remand for the BIA to assess the evidence under the proper legal standards."  The government largely agrees. The government concedes that the BIA erred in interpreting § 1473.7(a)(1), and it too asks us to remand on that basis.  As counsel for the government stated at oral argument: "The reason why we said the Board erred in this regard is because the Board decision states that, explicitly on its face, [§ 1473.7(a)(1)] is for rehabilitative vacaturs—and we agree that's not right; that's incorrect."  The government also concedes that the Board can, and should, reassess diligence

---

[2] On November 30, 2022, we granted Bent's unopposed motion to consolidate Petition No. 22-112 and Petition No. 22-1910.  By separate order issued on this day, we sever Petition No. 22-112 and hold it in abeyance pending the BIA's decision on remand on Petition No. 22-1910.

on remand.  As counsel for the government stated at oral argument: "[I]f the Board finds this to be a substantive vacatur, it's pretty rare that the Board will nonetheless find that someone hasn't acted diligent in pursuing that vacatur, so, we think the questions are wrapped up together."  We agree with the government.  Where, as here, a federal agency requests that a case be remanded to the agency, "[c]ourts generally grant [the] agency's request for voluntary remand unless the request is frivolous or made in bad faith." *Nat. Res. Def. Council v. EPA*, 38 F.4th 34, 60 (9th Cir. 2022) (citing *Cal. Cmtys. Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) (per curiam)); *see also Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) ("We commonly grant [agency remand] motions, preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete.").  In cases that come before us on petition for review of a BIA decision, we routinely grant remand where both parties request it, regardless of whether the government "conced[es] any error in the underlying proceedings." *Li v. Keisler*, 505 F.3d 913, 916 (9th Cir. 2007); *see, e.g.*, *Mero v. Barr*, 957 F.3d 1021, 1024 (9th Cir. 2020) ("Because the government's voluntary request for remand is neither frivolous nor made in bad faith, we grant the request.") (citing *Cal. Cmtys. Against Toxics*, 688 F.3d at 992); *Alanniz v. Barr*, 924 F.3d 1061, 1069 (9th Cir. 2019) ("[W]e accede to the parties' request and remand this issue to the agency.").

In light of the government's request for remand to the BIA, the question before us is whether "the request is frivolous or made in bad faith." *Nat. Res. Def. Council*, 38 F.4th at 60 (citation omitted); *Mero*, 957 F.3d at 1024.  There is no indication of bad faith in this case, and no party has

suggested otherwise. And we conclude that the government's request for remand is not frivolous, given the BIA's error in mischaracterizing § 1473.7(a)(1) and misapplication of our equitable-tolling precedent.

## A. California Penal Code § 1473.7(a)(1)

Remand is not frivolous because the BIA erred by misconstruing § 1473.7(a)(1). Where a person has been ordered removed from the country, state court vacaturs can sometimes vitiate the grounds for removal. If a state court vacates a conviction on account of a "procedural or substantive defect," that conviction is "not a 'conviction' for immigration purposes." *Ballinas-Lucero v. Garland*, 44 F.4th 1169, 1178 (9th Cir. 2022) (quoting *Nath v. Gonzales*, 467 F.3d 1185, 1189 (9th Cir. 2006)). By contrast, if a state court vacates a conviction "solely for rehabilitative reasons or reasons related to [the petitioner's] immigration status," that conviction remains valid for immigration purposes. *Nath*, 467 F.3d at 1189. Here, the BIA correctly noted that the state court vacated Bent's conviction pursuant to California Penal Code § 1473.7(a)(1). But the BIA then stated that "California Penal Code section 1473.7(a)(1) . . . explicitly allows for vacatur of state convictions solely to alleviate immigration consequences."

That is wrong. As the government concedes, § 1473.7(a)(1) provides that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" on the grounds that "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." Cal. Penal Code § 1473.7(a)(1). We need not dust off our

dictionary or delve into the legislative history of § 1473.7(a)(1) to see that the statute provides a vehicle to vacate a conviction to address a substantive or procedural error that renders a conviction "legally invalid." The plain text does *not* permit a state court to vacate a conviction to alleviate any immigration consequences arising from the conviction or sentence.

The state court's order vacating Bent's conviction bears out this plain language reading of § 1473.7(a)(1). The state court held:

> The no contest plea to Penal Code section 664/187(a), attempted murder, entered September 6, 2006, is set aside in its entirety on the ground [that Bent] was unable to meaningfully understand and defend against the immigration consequences of his plea, *resulting in an involuntary plea in violation of the Fifth Amendment* [*to*] *the United States Constitution*, and is thus legally invalid pursuant to Penal Code section 1473.7(a)(1).

(Emphasis added). That order is clear: the state court set aside Bent's no contest plea because it was based on "an involuntary plea in violation of the Fifth Amendment." The finding of involuntariness stems from Bent's inability to understand and defend against the immigration consequences of his plea, but the court granted vacatur because the plea was constitutionally deficient—*not* to alleviate any adverse immigration consequences.

Accordingly, because the BIA plainly erred in construing both California Penal Code § 1473.7(a)(1) and the order vacating Bent's conviction, remand to the BIA would not be

frivolous. We accede to the parties' request to remand so that the BIA may reassess whether the government has met its burden of establishing that Bent's conviction remains valid for immigration purposes. *Nath*, 467 F.3d at 1189.

## B. Equitable Tolling

Remand is also not frivolous because the BIA misapplied our equitable tolling precedent in assessing whether Bent diligently pursued his rights. Ordinarily, a petitioner has ninety days to file a motion to reopen removal proceedings before the BIA from "the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7)(C)(i). But this ninety-day period is subject to equitable tolling. *Hernandez-Ortiz v. Garland*, 32 F.4th 794, 801 (9th Cir. 2022). Writ large, equitable tolling is a doctrine that "pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Arellano v. McDonough*, 598 U.S. 1, 6 (2023) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)). The doctrine rightly flows from "'a tradition in which courts of equity have sought to relieve hardships which, from time to time, arise from a hard and fast adherence to more absolute legal rules, which, if strictly applied, threaten the evils of archaic rigidity.'" *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and remanded sub nom. United States v. Wong*, 575 U.S. 402 (2015) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)) (internal citation and quotations omitted). "A petitioner seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."

*Holland*, 560 U.S. at 634 (internal quotations and citation omitted).

Here, Bent seeks to toll the statutory period from the date of his final order of removal, December 22, 2021, through the date that his conviction was vacated, May 17, 2022. *See Smith v. Davis*, 953 F.3d 582, 601 (9th Cir. 2020) (en banc) ("[T]he maximum additional time, beyond the period of limitations, available to a litigant otherwise eligible for equitable tolling, is equal to the amount of time that the extraordinary circumstance that impeded timely filing existed."). The BIA did not consider whether some extraordinary circumstance preventing timely filing stood in Bent's way. Instead, it considered only whether Bent diligently pursued his rights. The BIA concluded that he did not. Without citing any authority, the BIA looked to Bent's diligence dating all the way back to his conviction in 2006, and it found that Bent failed to show the requisite level of diligence from 2006 through the date he filed his motion to reopen in 2022.

But the BIA misunderstands our equitable tolling doctrine. As we held in *Avagyan v. Holder*, "we measure [a petitioner's] diligence from th[e] date" on which "a reasonable person in [the petitioner]'s position [is put] on notice that something was wrong." 646 F.3d 672, 680 (9th Cir. 2011). Although the basis for Bent's motion to reopen in this case is that he entered an involuntary plea—and not, as in *Avagyan*, ineffective assistance of counsel—the proper starting point for measuring diligence in this case is when a reasonable person in Bent's position would be put on notice

of the error underlying his motion to reopen.[3]  After all, the diligence requirement in our equitable tolling doctrine stems from the adage that "equity aids the vigilant, not those who slumber on their rights."  *Smith*, 953 F.3d at 590 (citation omitted).

Here, at the time that Bent pleaded no contest and was sentenced in 2006, the state court did not explicitly advise him of any immigration consequences associated with the plea.[4]  Bent then served a decade-long prison term without having any reason to suspect that his plea and resulting conviction carried adverse immigration consequences. Accordingly, we cannot conclude that Bent slumbered on his rights; unless he was a psychic, Bent simply had no basis to know or suspect that he had any rights to pursue.  It was only when he was served with an NTA in 2016 charging him as removable based on his 2006 conviction that a reasonable person in Bent's position would be on notice of the error underlying his motion to reopen—*i.e.*, that he had entered an involuntary plea with adverse immigration consequences. Accordingly, the BIA should measure Bent's diligence from

---

[3] Citing to a federal regulation that is currently subject to a nationwide injunction, 8 C.F.R. § 1003.2(c)(3)(v), Bent argues that the BIA erred because "the BIA does not consider facts and circumstances that occurred before the final removal order to be relevant to diligence."  *See Bravo-Bravo v. Garland*, 54 F.4th 634, 637 (9th Cir. 2022) (citing *Cath. Legal Immigr. Network, Inc. v. Exec. Off. for Immigr. Rev.*, 2021 WL 3609986 at *1 (D.D.C. Apr. 4, 2021); *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 928 (N.D. Cal. 2021)) (noting that the regulation has been enjoined).  The enjoined regulation is not currently in effect and therefore does not impact our analysis.

[4] Indeed, in its 2022 vacatur order, the state court found that Bent "was unable to meaningfully understand and defend against the immigration consequences of his plea."

the date that he received the NTA.  *See Avagyan*, 646 F.3d at 680.

And remand so that the BIA may assess diligence during the relevant period would not be frivolous because the record cuts both ways.[5]  On the one hand, Bent did not pursue vacatur of his conviction for five years after he received the NTA.  That may well undermine his ability to demonstrate that he diligently pursued his rights.  But on the other hand, there is also good reason to believe that Bent *did* diligently pursue his rights during this period.  After all, due diligence requires a showing of reasonable diligence, not "maximum feasible diligence."  *Holland*, 560 U.S. at 653.  That is, we do not require petitioners to demonstrate "an overzealous or extreme pursuit of *any and every* avenue of relief."  *Doe v. Busby*, 661 F.3d 1001, 1015 (9th Cir. 2011) (emphasis added).  In assessing a petitioner's diligence, we "consider the petitioner's overall level of care and caution in light of his or her particular circumstances," and we are "guided by decisions made in other similar cases . . . with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case."  *Smith*, 953 F.3d at 599 (citations omitted); *see Ford v. Gonzalez*, 683 F.3d 1230, 1238 (9th Cir. 2012) ("Our focus . . . is simply whether the petitioner exercised reasonable diligence given his particular circumstances,

---

[5] Our dissenting colleague faults us for "wad[ing] into the merits of the diligence question, rather than merely remanding this issue to the agency."  Dissent at 27 n.4.  But contrary to the dissent's suggestion, we do not decide one way or the other whether "Bent acted diligently in these circumstances."  Dissent at 25.  Rather, we engage with—but do not resolve—the merits of the diligence issue only to assess whether the government's remand "request is frivolous," nothing more.  *See Nat. Res. Def. Council*, 38 F.4th at 60.  So we leave the ultimate resolution of the diligence question to the Agency, as the government asks us to.

including any impediments confronting him and the resources at his disposal." (emphasis omitted)).

Here, after Bent's NTA put him on notice that he was removable, he fervently defended against removal, first before the IJ and then several times before the BIA and this court. He undertook these efforts after spending nearly a decade in prison and while in immigration detention.[6] Indeed, the basis for Bent's vacatur—§ 1473.7(a)(1)—did not come into effect until 2017, long after his unconstitutional conviction.[7] But that was not all. In 2022, while his petition for review of his final order of removal was still pending, Bent pursued and obtained his state court vacatur. Approximately one month later, before his merits petition was even fully briefed before us, he also filed his motion to reopen. He was so diligent that his petitions for review on the merits and on the motion to reopen are both presently before us. Accordingly, we agree with the parties

---

[6] Bent remained in DHS detention from 2016 until April 2020.

[7] As amici set forth in their amici curiae brief: "Section 1473.7 is a procedural vehicle for individuals to vacate unlawful convictions *after* they leave state custody. Prior to section 1473.7's enactment, no such post-custodial mechanism existed. Under state law, an individual could pursue vacatur of an unlawful conviction while still in state custody, but many could not once their custody concluded. Section 1473.7 filled that procedural gap." Accordingly, the BIA's diligence analysis should consider that, from the time Bent had reason to become aware of the adverse immigration consequences in June 2016 through the effective date of § 1473.7, Bent appears to have had no avenue to obtain vacatur of his unconstitutional conviction.

that remand on the issue of diligence would not be frivolous.[8]

Additionally, remand is appropriate so that the BIA can assess whether extraordinary circumstances stood in Bent's way and prevented timely filing. *Hernandez-Ortiz*, 32 F.4th at 801. We have considered, though not decided, "whether vacatur of a conviction underlying a removal order on constitutional grounds qualifies" as an extraordinary circumstance for the purpose of equitable tolling. *Covarrubias-Delgado v. Garland*, 2023 WL 4928509, at \*1 (9th Cir. Aug. 2, 2023). This issue appears to be percolating throughout the Circuit. For example, in *Covarrubias-Delgado*, in deference to the BIA, "we remand[ed] to the BIA to determine whether vacatur of [the petitioner]'s criminal conviction is an extraordinary circumstance that explains the delay in filing his motion to reopen." *Id.* at \*1 (citing *INS v. Ventura*, 537 U.S. 12, 16–18 (2002)). Similarly, in *Guzman-Nunez v. Garland*, we remanded so that the BIA could "consider, in the first instance, whether the vacatur of [the petitioner's] conviction pursuant to

---

[8] Our dissenting colleague would treat Bent's failure to pursue vacatur for the five years after the effective date of § 1473.7 as dispositive of the diligence analysis. Dissent at 24. But such a *per se* rule fails to "consider [Bent]'s overall level of care and caution in light of his . . . particular circumstances." *Smith*, 953 F.3d at 599. Of course, had Bent failed to pursue his rights in *any way* for five years after being put on notice of the error underlying his motion to reopen, that would demonstrate a lack of diligence. *See Bonilla v. Lynch*, 840 F.3d 575, 583 (9th Cir. 2016) (affirming that petitioner "did not act with due diligence, as there was a six year gap—between 2002 and 2008—in his pursuit of legal advice"). But that is not this case; Bent actively pursued his rights throughout his removal proceedings until he filed his motion to reopen. We leave the determination of whether Bent acted with due diligence during that period for the Agency to address on remand.

California Penal Code § 1473.7(a)(1) demonstrates that [he] faced 'extraordinary circumstances' for purposes of equitable tolling." 2023 WL 8889558, at *3 (9th Cir. Dec. 26, 2023); *see also Alcazar-Martinez v. Garland*, No. 21-1382 (9th Cir. August 15, 2024).[9]  As we did in those cases, we leave it to the BIA[10] to determine on remand whether the vacatur of Bent's conviction on constitutional grounds under § 1473.7(a)(1) demonstrates that he faced extraordinary circumstances for purposes of equitable tolling.

## IV.    Conclusion

For these reasons, we **GRANT IN PART** the petition for review and **REMAND** this case to the BIA for further proceedings consistent with this opinion.[11]

---

[9] We cite these unpublished memorandum dispositions not for their precedential value, but to highlight that this issue has appeared before us with some frequency but remains unresolved by the BIA.

[10] Although the issue remains unresolved by the BIA, we note that in 2019, the BIA held in an unpublished decision: "We also find the decision of the New Mexico criminal court judge vacating and setting aside the respondent's 2007 criminal conviction on constitutional grounds to constitute an extraordinary circumstance, supporting the conclusion that equitable tolling of the filing deadline is warranted in this case." *In Re: Javier Hector Plata-Herrera*, 2019 WL 3776104, at *2 (DCBABR Apr. 30, 2019).

[11] The government's pending motion for remand (Dkt. 33) is **DENIED** as moot.

Forrest, J., dissenting.

A petitioner generally must file a motion to reopen removal proceedings within 90 days of a final order of removal. 8 U.S.C. § 1229a(c)(7)(A), (C)(i). Petitioner Claude Bent did not file his motion to reopen until several months after this deadline passed. He nonetheless argues that his motion was timely on two grounds. First, he relies on a 2021 regulation that provides an exception to untimeliness where there have been material changes in fact or law. Second, he asserts that he is entitled to equitable tolling. He is incorrect on both points. Under a proper application of our law, the Board of Immigration Appeals (BIA) did not abuse its discretion in denying Bent's motion to reopen as untimely. *See Hernandez-Ortiz v. Garland*, 32 F.4th 794, 800 (9th Cir. 2022) (stating standard of review). Therefore, I respectfully dissent.

## I.  Changed-Circumstances Regulation

The regulation that Bent relies on—8 C.F.R. § 1003.2(c)(3)(v) (2021)—went into effect in January 2021 and excused an untimely motion to reopen where the petitioner could show "[a] material change in fact or law underlying a removability ground or grounds . . . that occurred after the entry of an administratively final order that vitiates all grounds of removability" and that he "exercised diligence in pursuing the motion to reopen." As the majority notes, the Northern District of California issued a nationwide injunction prohibiting the "implementation and enforcement" of this regulation in March 2021. *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 980 (N.D. Cal. 2021); *see also Perez-Camacho v. Garland*, 54 F.4th 597, 605 n.11 (9th Cir. 2022). The injunction currently remains in place.

Accordingly, 8 C.F.R. § 1003.2(c)(3)(v) was not in effect when Bent filed, or when the BIA ruled on, his motion to reopen. When the BIA decided Bent's motion, there was no regulatory exception to the timeliness requirement for motions to reopen based on a vacated conviction or a material change in fact that eliminates all grounds of removability. *See* 8 C.F.R. § 1003.2(c)(3) (2020). Thus, per the regulations, Bent had 90 days to file his motion, which he did not do.

## II.  Equitable Tolling

Bent argued in his briefing that his motion to reopen was timely because the BIA's practice is to grant reopening where a petitioner obtains post-conviction relief that vitiates all grounds of removability. At oral argument, he further asserted that the BIA generally grants reopening based on post-conviction relief that eliminates all removability grounds without even discussing the petitioner's due diligence.[1]

"This court . . . recognizes equitable tolling of deadlines and numerical limits on motions to reopen or reconsider during periods when a petitioner is prevented from filing because of deception, fraud, or error, as long as the petitioner acts with due diligence in discovering the deception, fraud, or error." *Iturribarria v. INS*, 321 F.3d 889, 897 (9th Cir. 2003). In other words, a petitioner seeking equitable tolling must establish that: (1) some extraordinary circumstance

---

[1] Bent cited the following BIA cases as examples: *In re Demirchyan*, No. AXXX-XX4-622, 2019 WL 7168795 (BIA Oct. 31, 2019); *In re Limon Castro*, No. AXXX-XX0-288, 2018 WL 8333468 (BIA Dec. 28, 2018); *In re Saco Cotito*, No. AXXX-XX9-284, 2020 WL 1169206 (BIA Jan. 6, 2020); and *In re Mendoza Sotelo*, No. AXXX-XX8-491, 2019 WL 8197756 (BIA Dec. 23, 2019).

prevented timely filing and (2) he acted diligently in discovering that extraordinary circumstance. *Avagyan v. Holder*, 646 F.3d 672, 679 (9th Cir. 2011). This inquiry is "fact-intensive and case-specific" and requires an assessment of "the reasonableness of [the] petitioner's actions in the context of his or her particular circumstances." *Id.*

The due-diligence analysis proceeds in three steps. First, the court must "determine if (and when) a reasonable person in petitioner's position would suspect the specific fraud or error underlying [his] motion to reopen." *Id.* Second, the court must "ascertain whether [the] petitioner took reasonable steps to investigate the suspected fraud or error, or, if [the] petitioner is ignorant of [the error], whether [the] petitioner made reasonable efforts to pursue relief." *Id.* And third, the court must "assess when the tolling period should end; that is, when [the] petitioner definitively learns of the harm resulting from [the error], or obtains 'vital information bearing on the existence of his claim.'" *Id.* (citation omitted).

Failing to analyze due diligence in considering whether equitable tolling applies—or automatically evaluating diligence from the moment post-conviction relief is granted—is inconsistent with our precedent. For example, in *Perez-Camacho*, the petitioner was convicted in 1997 of abusing his spouse and was ordered removed in 2005. 54 F.4th at 601. More than a decade later, the petitioner moved to reopen, claiming that he was no longer removable because the state court modified his conviction based on a constitutional defect. *Id.* at 601–02. The BIA denied the motion to reopen. *Id.* at 602. On appeal, we concluded the petitioner's motion was untimely, and that his filing deadline was not equitably tolled, even though he submitted "evidence of his modified conviction within days after the

state court's modification order." *Id.* at 605, 607. We explained that the petitioner "waited 21 years (13 of which occurred after his final order of removal was rendered) to seek modification of his conviction in state court based on the . . . alleged [error] in 1997" and "provided no basis as to his 'reasonable efforts to pursue relief' during the 21-year period, nor provided any explanation for such an 'exceedingly long' delay." *Id.* at 607 (citation omitted). Thus, the BIA did not abuse its discretion in declining to apply equitable tolling. *Id.*

Similarly, in *Lara-Garcia v. Garland*, the petitioner was convicted of drug possession in 2008 and removed the same year. 49 F.4th 1271, 1274 (9th Cir. 2022). The state court dismissed the drug conviction ten years later, and the petitioner moved to reopen. *Id.* The BIA denied the motion as untimely, concluding the petitioner was not entitled to equitable tolling. *Id.* at 1274–75. Again, we found no error because the petitioner "did not seek to have his conviction expunged until nearly a decade after he was convicted" and presented no evidence explaining the delay. *Id.* at 1277. Both *Perez-Camacho* and *Lara-Garcia* demonstrate that a petitioner's diligence is assessed based on when he has reason to suspect the error underlying his motion to reopen, not when he obtains post-conviction relief.

Here, Bent's asserted error that underlies his motion to reopen is that he did not understand how his guilty plea and resulting conviction would impact his immigration status. I agree with the majority that Bent had no reason to know of the adverse immigration consequences flowing from his conviction until he was served a Notice to Appear (NTA) before immigration authorities in 2016. Maj. Op. at 15–16. I also agree that Bent cannot be faulted for not seeking vacatur of his conviction before California made that relief available

to him in 2017, when California Penal Code § 1473.7 went into effect. But that is where our agreement ends.

The majority asserts that the BIA failed to identify "the proper starting point for measuring diligence in this case." *Id.* at 14. According to the majority, the BIA assessed Bent's diligence starting from 2006, when he was convicted. *Id.* But that is only partly true. The BIA first addressed the date of Bent's conviction, but it went on to acknowledge that Bent "was aware of the potential immigration consequences of his convictions not later than 2016, when he was served with the [NTA]." Considering this later date, the BIA determined that Bent "ha[d] not shown the requisite due diligence to be granted equitable tolling" because he waited several years after § 1473.7 took effect in January 2017 to seek vacatur of his conviction. The majority ignores the BIA's consideration of Bent's diligence after he received his NTA and instructs the BIA to redo an analysis that the BIA has already done. *See id.* at 18 n.8 ("We leave the determination of whether Bent acted with due diligence [after he received his NTA] for the Agency to address on remand.").

The BIA did not abuse its discretion in concluding that Bent failed to act diligently after receiving the NTA. Bent waited *five years* after California enacted § 1473.7 before seeking post-conviction relief. *Cf. Avagyan*, 646 F.3d at 680–81 (concluding petitioner was not diligent where she had reason to suspect that counsel inadequately prepared her asylum petition but took no affirmative steps to investigate counsel's performance); *Bonilla v. Lynch*, 840 F.3d 575, 583 (9th Cir. 2016) (explaining the BIA properly concluded that the petitioner did not act diligently where he "waited *six* years to take any further action to negate [his] deportation order" and failed to provide a reasonable "explanation for waiting that long"). Bent's justification for his delay is that

he was waiting for the BIA to decide his merits appeal in his removal proceedings, which occurred in December 2021, because otherwise he would be "pursuing a [post-conviction] remedy that may have been rendered moot" by a favorable ruling from the BIA.[2] Apparently, the majority accepts this reasoning because it concludes that Bent acted with diligence by "fervently" contesting the removal proceedings and then seeking vacatur of his conviction after the BIA denied him relief from removal. Maj. Op. at 17.

I cannot agree that Bent acted diligently in these circumstances. The purpose of equitable tolling is to ameliorate the harsh consequences of strictly applying a time limit where a petitioner has diligently pursued his rights but "some extraordinary circumstance . . . prevented timely filing." *Lona v. Barr*, 958 F.3d 1225, 1232 (9th Cir. 2020). We assess diligence based on "the reasonableness of [the] petitioner's actions in the context of his or her particular circumstances." *Avagyan*, 646 F.3d at 679. Bent was represented by counsel throughout his removal proceedings after this court's remand in 2019. And, during that time, he was aware that § 1473.7 offered relief to defendants who did not understand the adverse immigration consequences of

---

[2] Bent also argues that the BIA arbitrarily departed from its practice of granting reopening to petitioners who obtain a vacatur after a final order of removal. Bent is correct that under certain circumstances the BIA may "act[] arbitrarily when it exercises its discretion to deny a reopening in one case when it has granted a reopening in another factually similar case." *Israel v. INS*, 785 F.2d 738, 741 (9th Cir. 1986). But this rule generally applies to factually similar *published* BIA decisions. *See id.* at 740–42; *cf. Gomez-Sanchez v. Sessions*, 892 F.3d 985, 994–95 (9th Cir. 2018). Bent does not cite any published BIA decision to support his argument that it is BIA policy to grant reopening whenever a petitioner receives post-conviction relief that eliminates all grounds for removability.

their conviction due to legal error. Yet, Bent did not pursue relief under that statute until the conclusion of his removal proceedings.

A reasonable person in Bent's position would have sought vacatur of the conviction *that served as the government's sole basis for removal* at the same time as defending against removal. Indeed, one wonders why that was not his primary strategy for defending against removal, where a vacatur likely would have led to immediate termination of removal proceedings.[3] *See Ballinas-Lucero v. Garland*, 44 F.4th 1169, 1177–78 (9th Cir. 2022) (explaining that convictions vacated on procedural or substantive grounds cannot serve as the basis for removal). I disagree with the majority's suggestion that requiring Bent to pursue post-conviction relief before his removal proceedings were complete is akin to requiring "maximum feasible diligence" or something more than reasonable diligence. Maj. Op. at 16 (citation omitted). It is reasonable to expect a petitioner who knows that the agency is denying relief specifically because of a criminal conviction to seek post-conviction relief, even before removal proceedings are concluded, where there is a reason and a known path for doing so. *See Hernandez-Ortiz*, 32 F.4th at 801 (stating motions to reopen are "particularly disfavored in immigration proceedings, where every delay works to the advantage of the deportable alien who wishes

---

[3] Bent instead argued that his attempted murder conviction for attempting to strike a man with a car was not an aggravated felony because the relevant California statutes criminalize the attempted murder of a human being and a fetus. According to Bent, only the murder of a human being is an aggravated felony, and the record is unclear as to whether he was convicted of attempting to murder a human being or a fetus.

merely to remain in the United States." (quoting *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1150 (9th Cir. 2010))).

Because the BIA did not abuse its discretion in concluding that Bent failed to diligently pursue his rights after receiving the 2016 NTA, he is not entitled to equitable tolling, and there is no need to analyze step three—when the tolling period ended. *See Avagyan*, 646 F.3d at 679. Bent had 90 days from December 2021, when the BIA dismissed his appeal in his removal proceedings, to file his motion to reopen. He did not meet that deadline, and, therefore, the BIA reasonably determined that Bent's motion to reopen was untimely.[4] For these reasons, I would deny this petition for review.[5]

I respectfully dissent.

---

[4] The Government requested a remand for the BIA to reassess Bent's diligence, among other things. But the majority has waded into the merits of the diligence question, rather than merely remanding this issue to the agency, by suggesting that there "is . . . good reason to believe that Bent *did* diligently pursue his rights," Maj. Op. at 16, and that "Bent actively pursued his rights throughout his removal proceedings until he filed his motion to reopen," *id.* at 18 n.8. Moreover, there is no basis to remand where the agency has not erred. *See Singh v. Holder*, 591 F.3d 1190, 1192 (9th Cir. 2010).

[5] Because the majority holds Bent's Petition No. 22-122 concerning the BIA's merits decision in abeyance, Maj. Op. at 9 n.2, I do not address the issues raised there.